IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EDWARD KOSISKI,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTT R. FRAKES, BARBARA LEWEIN, AND PAUL RODRIGUEZ,<br><br>    Defendants. | 8:16CV345<br><br>**MEMORANDUM AND ORDER** |

Plaintiff filed his Complaint on July 13, 2016. (Filing No. 1.) Plaintiff was given leave to proceed in forma pauperis. (Filing No. 11.) On October 11, 2016, the court ordered Plaintiff to file an amended complaint because his Complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure. (Filing No. 12.) The court advised Plaintiff that his amended pleading will supersede, rather than supplement, his Complaint. (*Id*.) On November 9, 2016, Plaintiff filed an Amended Complaint. (Filing No. 13.) Now, the court conducts review of Plaintiff's Amended Complaint.

## I. SUMMARY OF AMENDED COMPLAINT

Plaintiff was convicted of attempted first degree sexual assault of a child. (Filing No. 13 at CM/ECF p. 3.) He is incarcerated with the Nebraska Department of Correctional Services ("NDCS") at the Omaha Correctional Center ("OCC"). (*Id*. at CM/ECF p. 2.) Plaintiff has named as Defendants three individuals employed with NDCS: Director Scott R. Frakes ("Frakes"), Warden Barbara Lewein ("Lewein"), and Paul Rodriguez ("Rodriguez"). (*Id*.) All Defendants are sued in their individual and official capacities. (*Id*. at CM/ECF p. 3.)

Plaintiff alleges that Defendants, despite his repeated requests, denied him structured programming prior to his first parole eligibility date in violation of due process and state law. (*Id*. at CM/ECF pp. 3-5, 10.) He admits that he eventually received a recommendation from the Clinical Sex Offender Review Team ("CSORT") to participate in the Outpatient Healthy Lives Program ("oHeLP"). (*Id*. at CM/ECF pp. 3, 5.) Plaintiff began treatment through oHeLP at OCC in January 2016. (*Id*. at CM/ECF p. 6.)

Plaintiff alleges that, upon completing the first phase of oHeLP, he requested a progress evaluation from Dr. Kirk A.B. Newring, a former employee of NDCS, because his program facilitators denied his request. (*Id*.) In a report dated March 15, 2016, Dr. Newring opined that Plaintiff is "not in need of further sexual offense behavior specific treatment, though he is recommended for a Continuing Care/Aftercare level of service." (*Id*. at CM/ECF p. 24.) Plaintiff states that one of his facilitators told him on April 6, 2016, that he was "doing well" and that the facilitators would "see what we can do to get you moved up to Phase II." (*Id*. at CM/ECF p. 7.)

In a letter dated April 28, 2016, Rodriguez advised Plaintiff that CSORT reviewed his treatment progress on April 20, 2016, and determined that Plaintiff would be placed on probation. (*Id*. at CM/ECF pp. 7, 25.) Plaintiff alleges that Rodriguez is the Sex Offender Services Clinical Program Manager and the CSORT Chairperson. (*Id*. at CM/ECF pp. 2-3.) Plaintiff's probation began April 28, 2016, and remained in effect for approximately sixty days. (*Id*. at CM/ECF p. 26.) Plaintiff alleges that Rodriguez placed him on probation without procedural due process. (*Id*. at CM/ECF pp. 8, 11.)

Plaintiff contends that he told "Mental Health at OCC" on July 18, 2016, that he was contemplating a lawsuit. (*Id*. at CM/ECF p. 7.) In a letter dated July 22, 2016, Rodriguez informed Plaintiff that CSORT determined on June 17, 2016, that his treatment outcome was "Unsatisfactory Progression and Termination." (*Id*. at CM/ECF p. 27.) Plaintiff states that he "made every effort to comply with the

2

expectations and directives given him during his participation in oHeLP, including during probation, to the best of his ability." (*Id.* at CM/ECF p. 7.) He alleges that Defendants terminated his programming without procedural due process. (*Id.* at CM/ECF pp. 8, 11.) Plaintiff claims that Rodriguez terminated him in retaliation for his possible lawsuit and for his favorable evaluation from Dr. Newring after facilitators denied his request. (*Id.* at CM/ECF pp. 8-9, 11.) He maintains that Rodriguez backdated his termination date from oHeLP to June 17, 2016, a date prior to filing his Amended Complaint. (*Id.* at CM/ECF p. 11.)

Plaintiff alleges that he has been denied parole and transfer to "Community custody" because of his termination from oHeLP and because of his "program needs." (*Id.* at CM/ECF pp. 9-10.) He also claims that he has been denied transfer and "a favorable recommendation" for parole because he is a sex offender. (*Id.* at CM/ECF p. 10.) Plaintiff alleges that, despite their lack of treatment, other similarly-situated inmates have received transfers to "Community custody" and been granted parole after favorable recommendations from CSORT. (*Id.* at CM/ECF p. 10.) He states that a sex offender was granted parole in August after refusing all treatment recommended by CSORT. (*Id.*)

Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages. (*Id.* at CM/ECF pp. 1, 12-14.)

## II. APPLICABLE STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

3

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION OF CLAIMS

**A.  Sovereign Immunity**

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state,

4

including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff seeks monetary damages against state employees in their official and individual capacities. (Filing No. 13 at CM/ECF pp. 1, 13.) Plaintiff's claims for monetary relief against Defendants in their official capacities are barred by the Eleventh Amendment.

**B.  Fourteenth Amendment Due Process Claims**

Liberally construed, Plaintiff alleges Defendants have denied him due process of law in violation of the Fourteenth Amendment. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Plaintiff must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id*. (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (quotations omitted).

"The general rule" is that "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id*. at 808 (finding that termination from a drug treatment program that was mandatory for parole, but discretionary with prison officials, was not outside of the punishment originally imposed). A state-created liberty interest arises when a

5

statute or regulation imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Morrissey v. Brewer*, 408 U.S. 471 (1972). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487.

Here, the issue does not appear to be that Plaintiff truly wants structured programming, namely sex offender treatment. Instead, Plaintiff complains that he received adverse consequences, namely the denial of parole and the denial of transfer, because of his termination from the oHeLP treatment program. (*See* Filing No. 13 at CM/ECF pp. 12-13.) First, there is no liberty interest in parole, or even the *possibility* of parole, arising from the Due Process Clause. *See Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Nebraska Penal & Corrections*, 442 U.S. 1, 9–11 (1979)). Second, Plaintiff has no constitutional right to be housed in any particular prison or to receive a particular classification. See *Olim v. Wakinekona*, 461 U.S. 238, 245, (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). Finally, in Nebraska, taking advantage of self-improvement opportunities is only one among a multitude of factors that the Nebraska Board of Parole considers in determining if a prisoner should be paroled. Neb. Rev. Stat. § 83–1,114(2) (Reissue 2014). Failure to complete a personalized program plan may be considered by the Nebraska Board of Parole as a factor in its decision, but denial of parole on those grounds is not mandatory. Neb. Rev. Stat. § 83–1,107(1)(b) (Reissue 2014).[1]

The adverse consequences of CSORT's decision to terminate Plaintiff from oHeLP were insufficient to confer a liberty interest for due process purposes. *See Persechini*, *supra*. Therefore, the court need not consider whether CSORT's

---

[1] Plaintiff's due process claim that he was denied structured programming prior to his first parole eligibility date fails for the same reasons.

procedures were constitutionally adequate. *Id.*[2] Moreover, a federal court will not inquire into whether "state officers follow state law." *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("[The plaintiff's] only argument is that the state failed to follow its own procedural rules and thus failed to afford him the due process of law mandated by the Constitution. But, as we have stated above, the Due Process Clause does not federalize state-law procedural requirements."). Plaintiff's due process claims against Defendants will be dismissed for failure to state a claim upon which relief can be granted.

C.  **Retaliation**

Plaintiff alleges a retaliation claim against Rodriguez. The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out. *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)); *Bernini v. City of St. Paul*, 665 F.3d 997, 1006–07 (8th Cir. 2012); *see Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013). To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Peterson*, 754 F.3d at 602.

Liberally construed, Plaintiff states a plausible retaliation claim against Rodriguez. Plaintiff claims that Rodriguez terminated him in retaliation for his possible lawsuit and for his favorable evaluation from Dr. Newring after facilitators denied his request. (Filing No. 13 at CM/ECF pp. 8-9, 11.) He maintains that Rodriguez backdated his termination date from oHeLP to June 17, 2016, a date prior to filing his Amended Complaint. (*Id.* at CM/ECF p. 11.)

---

[2] For the same reasons, the court need not consider whether CSORT's procedures when it placed Plaintiff on probation were constitutionally adequate.

Plaintiff's retaliation claim against Rodriguez in his official and individual capacities may proceed to service of process.[3] The court cautions Plaintiff that that this is only a preliminary determination based on the allegations of the Complaint. This is not a determination of the merits of his claims or potential defenses thereto.

**D.  Equal Protection**

Plaintiff alludes to an equal protection claim against Defendants, specifically Lewien. (*See* Filing No. 13 at CM/ECF pp. 9-10.) In order to establish an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a "fundamental right." *Patel v. United States Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). Plaintiff's alleged differential treatment is not based upon a suspect classification or a "fundamental right." Plaintiff's equal protection claim against Defendants will be dismissed for failure to state a claim upon which relief can be granted.

IT IS THEREFORE ORDERED that:

1.  Plaintiff's retaliation claim against Defendant Paul Rodriguez in his official and individual capacities may proceed to service of process. All other claims against all other Defendants are dismissed for failure to state a claim.

---

[3] To the extent that Plaintiff alleges retaliation claims against Frakes and Lewien, his allegations are insufficient to state a claim upon which relief may be granted because he does not allege their personal involvement beyond stating their job title responsibilities. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999), (concluding that a complaint was properly dismissed because plaintiff failed to allege facts supporting any individual defendant's personal involvement or responsibility for violations); *see also* Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997), (finding that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability).

2. Defendant Paul Rodriguez shall be served in his official capacity at the office of the Nebraska Attorney General. *See* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-510.02 (Reissue 2016). The clerk of the court is directed to complete a summons form and a USM-285 form for Defendant Paul Rodriguez using the address "Office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509," and forward them together with a copy of the Amended Complaint and a copy of this Memorandum and Order to the Marshals Service for service of process on Defendant in his official capacity.

3. Defendant Paul Rodriguez shall be served in his individual capacity at the Omaha Correctional Center, 2323 Avenue J Street, Omaha, NE 68110 using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016). The clerk of the court is directed to complete a summons form and a USM-285 form for Defendant Paul Rodriguez using the address "Omaha Correctional Center, 2323 Avenue J Street, Omaha, NE 68110," and forward them together with a copy of the Amended Complaint and a copy of this Memorandum and Order to the Marshals Service for service of process on Defendant in his individual capacity.

4. The clerk's office shall set a pro se case management deadline using the following text: February 25, 2017: check for completion of service of process.

Dated this 30th day of January, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge